Next case on the calendar is Velletti and Jabril v. Guidepoint Global. Mr. Licton, I see you have reserved two minutes for rebuttal. You can begin whenever you are ready. May it please the Court, my name is Stuart Licton of the firm Licton and Bright. We represent the plaintiffs' appellants in this case, Valenti Velletti and Dr. Faiza Jabril. This case comes before this Court on an appeal of a grant of summary judgment, and that grant was awarded after the Court below admittedly and expressly ignored the bulk of the plaintiff's evidence. As the Court explained or attempted to explain in its footnote one, the Court here is relying on plaintiffs' admissions in resolving this motion. And by admissions, the Court below meant the plaintiff's response to the 56.1 local rule requirement that the plaintiffs have to deny or admit. The plaintiffs submitted declarations which were not listed in the items that the Court reviewed. Counsel, can I ask you about that? You say that the Court ignored, for example, Velletti's declaration, right? Yes. So what do you make of the direct quote on page two of the ruling from the Velletti declaration? How do you allege that the Court ignored it when it directly quotes and cites from it? Well, because on page one of the judge's decision, the Court below lists exactly what is being considered. And it states that there's a statement of material facts. Oh, I know. So you're saying when she quotes something in her opinion, it's not considered. Well, what she quoted there was in the introductory paragraph saying that she was a good employee. Mr. Lichten, we're reviewing the Stanovo anyway, so I don't know if you want to waste your time focusing on the 56.1. I mean, I think it's better if you just explain to us on the evidence. Yeah, what is the evidence that whether the district court said, I'm not considering any of these declarations. Well, why don't you tell us what's in the declarations that raises an issue of fact as to gender discrimination, for example, in either case. Okay. The prima facie case for discrimination in both cases involves a statement by the president of the company that he wanted a hedge fund guy. But this is your plaintiff, Jabril, they hired a woman instead of her. So if you're claiming gender discrimination in the hiring decision, and they also tried to hire her for a different position later. But even putting that aside, if they hire a woman instead of your client and are claiming gender discrimination, how does that work? That's not correct. That's not correct? They didn't hire a woman? No. They hired – first of all, they told Dr. Jabril that they hired a man. Second of all, they take the position that 15 people were hired to carry out the responsibilities of that one position. Some of those 15 people are men. So it's not true that a woman was hired in that spot that Dr. Jabril was applying for. She was applying for a job that it takes 15 people to do? Well, that's what the company said. They said that 15 people were hired to do that job, to do certain aspects of that job. And how about Ms. Belletti? They fired Mr. Poole at the same time, who obviously is male. So what evidence is there that when they fired – I understand your retaliation claim, and I'm going to ask your adversary about that because I do have some questions about that. But on the gender discrimination claim, what evidence is there that they fired her because of her gender? Because she was replaced with a man or men, because there is a comment in her complaint that she made to the human resources person. She listed evidence of discrimination that she saw while she worked there. Right. One of those was a woman that she says was mistreated, and that is the very woman who wrote complaints to the company about your client and said that you better fire her. Right. Well, one complaint to the company. And she was not someone who worked with Ms. Belletti or who worked for Ms. Belletti or even met Ms. Belletti. No, you said Ms. Belletti was making it hard for her to do her job. That's what she said in her one complaint. But you're not alleging a hostile work environment claim, right? No. So Mr. Seabag is the decision on her termination, right? Correct. And he didn't remember why he terminated her. I understand that. We'll talk about that. But on the issue of whether it was because of her gender, what evidence is there that Mr. Seabag terminated her or the company terminated her because of her gender? Well, because Mr. Seabag made a gender-related discriminatory comment. What was that? That he wanted a hedge fund guy in the position that Ms. Belletti was hiring someone for. For the Jabril position? Right. But that is evidence of discrimination by the decision maker. Can I just come back to that point that you just – I'm looking at the plaintiff's local Rule 56.1 counterstatement. This is the same by you, and I'm looking at paragraph 79 with a statement – I think the defense was talking about the Jabril position. One of these women was offered and accepted the role. And in paragraph 79, the plaintiffs respond, admit. So I'm kind of curious because I thought you just said to us a minute ago that it was incorrect that a woman was hired for the slot that Ms. Jabril was applying for. But I'm reading paragraph 79, and you said admit. It's Appendix 858. I mean, you admitted it, so you're stuck with that now.  Well, I don't know what that's referring to off the cuff, but – Okay. Paragraph 78. At the time Jabril applied for the position, two other women interviewed for the same position. Admit. One of these women was offered and accepted the role. Admit. Then ultimately 15 individuals, including both men and women, were hired to fill the position. Right. And then you said deny 15 individuals were hired to perform aspects of the position sought by Jabril. Right. So that's different. You were saying, no, no, no, there weren't 15 people hired for that position. You say, no, one was hired for the position. These other people were hired for aspects of things that would have been for the position. But with respect to the Jabril putative position, you say a woman was hired. You admitted it. Well – I don't see how you come here now and take a different view of the facts. Okay, but ultimately both sides agree that 15 people either did perform aspects of the role or were hired to perform that. Well, if they hired one woman for that position and then they hire – they expand and they hire a whole lot of similar people, some of whom are men and some of whom are women, how does either of those facts help you in establishing that Jabril was discriminated against on the basis of her gender? If her very position went to a woman and then when they hire a lot of people for similar jobs or aspects of the job where they expand the department, they're hiring both men and women. How does any of that help you? Because it helps establish a prima facie case, which is not overwhelming. Why don't you spend just a few seconds on your retaliation claim? Do you want to spend 30 seconds on that? Okay. You're arguing temporal proximity and inconsistent reasons for her termination. That's essentially what your retaliation claim is? Temporal proximity is the key. But you have to have more than that. Once they articulate a legitimate nondiscriminatory reason, we have said over and over again, temporal proximity may be enough for a prima facie case. The plus that you have here is inconsistent reasons for her termination. Well, there's no reasons for her termination because the president of the company, who admittedly is the decision-maker, said he doesn't remember what he decided. Okay. All right. Thank you. All right. We'll hear from Ms. Primavera. Good morning. May it please the court. My name is Brittany Primavera with the Law Firm of Gordon and Reese on behalf of Defendant Appellee Guideline Global, LLC. The lower court not only applied the correct standard for summary judgment in assessing the plaintiff's claims of discrimination and retaliation, but went out of its way, contrary to appellant's assertion, to emphasize that they strongly considered plaintiff's own admissions in the counterstatement. Well, let me ask you about the retaliation claim. The district court said two things, which I think are incorrect as a matter of law. One is that because there may have been other reasons for her termination beyond retaliation that she could not establish a but-for cause. But we've said that's wrong because you can have multiple reasons and still establish that her protected activity was the but-for cause. So that's not correct, right? You would agree with that? That's correct. As an initial point, we don't believe that that email, the March 12, 2018 email, constitutes gender-protected activity. Let's put that aside for a minute. Sure. Assuming it does. The fact that there may have been more than one reason, it doesn't mean you can't establish a but-for cause, right? Yes. All right. And then the district court also said there was no prima facie case, but we have said over and over again, temporal proximity alone, one week is enough to establish a prima facie case, right? We've said that multiple times. That's correct, Your Honor. But when we just look at the actual purported protected activity, that email, nowhere in there does Ms. Valetti identify a form of gender discrimination or object to it. And the fact that we have to dig for it to try to create it is inappropriate, we believe. I don't know that you have to dig that hard. The first, if it was just the first page, I'm looking at appendix 708. Okay. Well, it's a toxic work environment. I suspect that a lot of people tend to use that meaning, a discriminatory toxic environment, but it doesn't say that. And it goes on to say, you know, this guy, Rutwick, is a bad guy and he's nasty to everybody, and that goes on for a page. But then the next page is all about women. It's about extreme discomfort with the treatment of Ashley, the person that she was, Valetti was apparently replacing. Then it's about the changes of Jessica while she was on maternity leave. So why is that not automatically a complaint about gender discrimination? Then I was prevented from hiring an extremely qualified female candidate. Not they got in my way, they interfered with my ability to run my team, and that's bad management practice, and they shouldn't have done it, and I should have been able to pick the person I wanted. But she specifically says a qualified female candidate following personal intervention by Albert. And he didn't even meet her. Why doesn't that sound to a reasonable reader as a complaint about gender discrimination? Well, the fact that they are females in and of itself doesn't give rise to an inference that these women, she believes these women were treated differently or disparately based on… It doesn't tell me that there's an actual case here, but it does tell me that somebody is complaining about something that she thinks is gendered. She may be wrong, but it's a complaint about the treatment of women in this department. Even if this court was to consider this a protected activity, Guidepoint has set forth two legitimate non-retaliatory reasons for her separation. We're past the no prima facie case, right? Because frankly, I don't know that I've ever seen this level of temporal proximity. People are arguing about it. It's a month. It's five months. Is it a year? Is that really temporally proximate in all these cases? This is like instantaneous. As soon as she complains and sends this letter, and as soon as her boss sends a similar complaint, although maybe not sounding as much as even this one does in gender discrimination, they both get picked. Doesn't that sound like somebody's getting fired because they complained? There's no doubt that there's a series of complaints in here. Her complaints that her performance was criticized by management, that they were understaffed, that her male supervisor was not showing up to the office. There are certainly three pages of complaints about her unhappiness that she only sat down to draft after the CEO, Albert Seabag, expressed his dissatisfaction with her on March 1st. There may be some factual argument about whether gender complaint or not gender complaint is really in good faith. There's obviously plenty of basis here for a factual issue over whether it was retaliation or was she setting up a retaliation claim in effect when there were plenty of legitimate reasons to fire her. But why is it a summary judgment case in a situation where the guy who makes the decision says, I don't really remember, there is the temporal proximity, the reasons that have been asserted at various times by the company seem to be inconsistent. Why doesn't that all create an issue for trial? Mr. Seabag's deposition occurred years after the fact. He said he didn't recall the details, which was an honest answer. Thankfully, we have a record that has two for certain complaints, one by the co-workers and she... Wait a second. We have no record of the decision-making. We do have complaints by the co-worker, but there's a black hole. After the complaints by the co-worker, they're sent to human resources. You could correct me if I'm wrong. There is not a single document in the record about the decision-making process. So even if Mr. Seabag doesn't remember years later what the reasons were, it's not like there were emails from him to HR or HR to him. I saw below, you said it was an internal investigation, I think, in your brief. Can you use the word internal? It was an internal investigation? Yes, after the fact. Okay. We don't have anything about that internal investigation in the record. Not a shred of document about the decision to terminate her. And you can correct me if I'm wrong. We have Mr. Seabag, the decision-maker, saying, I don't remember the reasons. And there's nothing in the record where anybody else at the company explains either the meetings that they had, the investigation that they did, or how they arrived at the decision. What we do have is the temporal proximity of the February 28th complaint and the March 1st complaint, and she was terminated two and a half weeks later. The fact in between there on March 12th, Ms. Valetti wrote an email, which, again, we do not agree is protected activity, we don't believe is availing here. We have two complaints that Ms. Valetti sent to us. So we should find a summary judgment because a co-worker complained about her and because it was a back-and-forth exchange with Mr. Seabag where he doesn't, I mean, I read that exchange, it doesn't say we're going to take action against you. It's, you know, there was a dispute about whether she needed to be authorized or not, that that's enough to deprive a jury to say that that reason, that reason that they've given, notwithstanding it took place a week after the complaints, that that's sufficient? Even though there's nothing in the record to support what you're articulating now are the reasons, other than that the complaint was made and there was issue with travel, there's nothing about the decision-making. I've never seen, I've dealt with hundreds of discrimination cases, I've never seen zero documentation, not even a declaration. You didn't even put a declaration in from your human resources department to say, after we got the co-worker's emails, here's what we did. Here's the internal investigation that we did. Here's what we told Mr. Seabag. There's not even a declaration. We disagree that it was a mere dispute about her travel. Ms. Fletty herself testified that Mr. Seabag, the CEO of the company, was enraged and was also angry at the mail supervisor. She said Mr. Poole authorized the travel. She disputed that it was unauthorized. She said Mr. Poole told her she could do it, right? In her email back to Mr. Seabag when he says, where are you, who gave you authority to go on this trip, she responds that she made the decision on her own volition. But doesn't Mr. Seabag, he's obviously angry, and he says there's going to be no more of this. You're not going to do travel anymore. He doesn't say you're fired. He doesn't say this was an unauthorized trip and I can't have that. Goodbye. He says we're going to take this action, and the action is you're not going to do this anymore. You clearly understand you're not supposed to do this. You're supposed to concentrate on the video conferences or whatever. Isn't that what he says? On March 1st, yes, that's what the email says. So what changes between then and you're fired? That was not taken into consideration, that email. The fact that there was also a February 28th complaint where Mr. Booker responded to that co-worker that was complaining about Ms. Floody demoralizing her team and her poor performance and her poor attendance and the fact she went on the Boston trip. He responded, he forwarded that to HR and said we're going to put on a performance improvement plan. So Mr. Seabag on March 1st, he wrote that email, but we're not also taking into consideration the additional complaint. So can I just ask this, though? You seem to be arguing, I think, that because there's all these grounds that you're describing, ample grounds to fire her, and she gets fired so quickly thereafter, we ought to presume that these are the reasons. That's a temporal proximity argument, right? But we also have the temporal proximity argument from the other side saying, well, it was even closer in time to my complaint. So I don't see why we have to, on a summary judgment, credit that because she was fired so close on the heels of these other complaints, that must be the reason when one could also say, well, it was even closer on the heels of the complaint. And you're saying, well, no, no, that temporal proximity doesn't matter, but the temporal proximity to the other stuff, the complaints, that does matter. We should be drawing a necessary inference from that. And I guess the question is, on summary judgment, why do you have to draw that inference, particularly when we're in summary judgment mode and we're not supposed to be drawing inferences, factual inferences, in favor of the moving party? The lower court properly looked at the two complaints and came to the conclusion, putting away the motivating factor but for casual connection, just looking at them and said that these two complaints, when the burden shifted back to the plaintiff, that she was unable to explain that these reasons were pretext in the face of two well-documented complaints and the fact that the CEO, arguably the most important person in the company, was so angry with her and there's no dispute that he was. Why was Mr. Poole fired? We do not have any documents relating to that at this point. So isn't it also peculiar that the co-worker wasn't complaining about him and yet he makes, as Judge Lynch pointed out, a similar complaint to Ms. Valetti, and a week later he gets fired too and there's nothing in the record regarding the reason for his term. In fact, Mr. Siebeck doesn't even remember whether he left voluntarily or was terminated. Mr. Siebeck doesn't even have anything to say about Mr. Poole. So isn't that peculiar? We don't think so for two reasons. Number one, if the argument is gender discrimination, Mr. Poole... No, no, this is retaliation we're talking about. Sure. The only... So they fired, their position, I think there's going to be a trial, is they fired both people who complained the week after they complained. But we have to look at the complaint. Mr. Poole's complaint, the only similarity is these complaints about Mr. Goddard, who was this outside consultant, a prior consultant, how he was dictating and micromanaging their team. They both were upset that this person was coming into a managerial role. Ms. Valetti testified that... You've got a great jury argument there, it seems to me, that Mr. Siebeck just cannot tolerate any criticism of himself or this guy, Rutwick. And that's what the problem is. It's not that she complained about gender discrimination, and it's not... Even if that's what she was complaining about, that's not what sets them off. What sets them off is nobody can touch Rutwick. Nobody can criticize Siebeck. And they both get canned. Great jury argument, but that's a jury issue, it seems to me, as to what... Particularly when we're all speculating about what Mr. Siebeck had in his mind, because he tells us, you know, I fired half this department, but, hey, more risk for your jury argument. I'm that kind of guy. I fire everybody. I don't like... I have very high standards. I'm very sensitive to criticism. I want to clean house all the time and get new people in. Maybe, but I just don't see how that can win on summary judgment. Respectfully, we think this is right for summary judgment in that plaintiff has a burden. Once it's shifted back to her and we set forth the reasons to show why they were contextual, and we don't believe she satisfied that requirement, there's not no burden. The mechanism of summary judgment is to act as gatekeeper and say there either is or not enough probative evidence to present before the trier of fact. And the lower court studied her own admission, studied the deposition testimony, and Judge Viscosol properly held that there were legitimate non-retaliatory reasons. They're right here on the record. Ms. Valetti herself doesn't dispute them, and it's proper for summary judgment. All right. Thank you. Thank you. Mr. Wickton, you have two minutes in rebuttal. I will rest on what I've already said unless the court has any questions. No, I don't think there are any other questions. Thank you. Thank you. All right. We'll reserve decision. Thank you both. Have a good day.